IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CLAIRE V. PASCAVAGE,  :
on behalf of herself and all others  :
similarly situated,  :
                                       :
           Plaintiff,  :
                                       :
           v.  :      Civ. No. 09-276-LPS
                                       :
OFFICE OF PERSONNEL  :
MANAGEMENT,  :
                                       :
          Defendant.  :

## OPINION

John S. Spadaro, JOHN SHEEHAN SPADARO, LLC, Hockessin, DE, Attorney for Plaintiff.

David. C. Weiss; Patricia C. Hannigan, UNITED STATES DEPARTMENT OF JUSTICE, Wilmington, DE, Attorneys for Defendant.

March 29, 2011
Wilmington, DE


**Stark, District Judge:**

This proposed class action presents a novel statutory construction issue. Specifically, the Court must interpret 5 U.S.C. § 8705(e), apparently an issue of first impression in the federal courts. The Court must also determine whether the Office of Personnel Management's construction of § 8705(e) comports with guiding principles of administrative law. Pending before the Court are the parties' cross motions for summary judgment.[1] (D.I. 13; D.I. 16) For the reasons that follow, the Court will grant Plaintiff's motion for partial summary judgment and deny the government's motion.

## I. BACKGROUND

The salient facts are not in dispute. (D.I. 17 at 1; D.I. 19) Claire V. Pascavage ("Plaintiff") is the former spouse of Louis M. Pascavage ("Mr. Pascavage"). (D.I. 14 at 5) The Pascavages were divorced in 1987, after thirty years of marriage. (D.I. 15 at A3) On August 21, 1995, the Family Court of the State of Delaware in and for New Castle County made determinations with respect to the division of marital property. (*Id.* at A1, A3)[2] Pursuant to the Family Court's Order, Mr. Pascavage was directed to name Plaintiff as "sole primary beneficiary of all life insurance presently in existence including employee life insurance." (*Id.* at A1) (hereinafter, "Divorce Decree")

Mr. Pascavage was an employee of the Panama Canal Commission, an independent

---

[1] Plaintiff's motion is for partial summary judgment as to the proper construction of 5 U.S.C. § 8705. (D.I.13)

[2] The reasons for the large gap in time between the divorce and the divorce decree – the Pascavages were divorced in 1987, whereas the division of marital property proceedings concluded in 1995 – are not readily discernible from the record.

1

agency established by Congress. (*Id.* at A3) As a federal employee, Mr. Pascavage elected to carry life insurance known as Federal Employees Group Life Insurance ("FEGLI").[3] Hence, the Divorce Decree required Mr. Pascavage to name Plaintiff as the beneficiary on his FEGLI life insurance policy.

On August 22, 1995, the day after the Family Court issued the Divorce Decree, counsel for Plaintiff provided the Office of Personnel Management ("OPM") with a copy of it.[4] OPM administers the FEGLI insurance program. 5 U.S.C. § 8716 (2006); *see also Metro. Life Ins. Co. v. Barber*, 2001 U.S. Dist. LEXIS 13996, at *6 (N.D. Tex. Sept. 7, 2001). OPM responded directly to Plaintiff and explained the process through which Mr. Pascavage could change the beneficiary designation on his FEGLI life insurance forms. (D.I. 18 at A16)

Plaintiff also forwarded a copy of the Divorce Decree to the Panama Canal Commission. (D.I. 15 at A9) The Panama Canal Commission wrote Mr. Pascavage "request[ing]" that he comply with the Divorce Decree since the "order appears valid on its face." (*Id.* at A11) Plaintiff apparently had no further communication with either OPM or the Panama Canal Commission.

At the time Plaintiff submitted the Divorce Decree to OPM in 1996, the FEGLI statute prescribed the order of preference for the distribution of the insurance proceeds, and the statute

---

[3]FEGLI is a comprehensive life insurance program for federal employees created by the Federal Employees Group Life Insurance Act of 1954, codified at 5 U.S.C. §§ 8701-8716 (2006) ("FEGLIA"). *See also* 5 C.F.R. Part 870 (1997).

[4]The record is unclear as to whether Plaintiff forwarded the Divorce Decree to OPM on August 22, 1995, as both parties indicate, or if, instead, Plaintiff notified OPM of the Divorce Decree on January 31, 1996. For purposes of the pending motions, however, the accuracy of the date is not relevant; either way, OPM clearly had notice of the Divorce Decree before Mr. Pascavage's death and before the pertinent statutory amendment. (D.I. 15 at A10)

did not provide any precedence for state court orders. Thus, at that time, OPM had no authority to honor the terms of state court orders determining FEGLI benefits. (D.I. 17 at 3) Instead, "[p]rior to 1998, court orders for FEGLI purposes were not tracked [by OPM] and were not necessarily filed in an annuitant's retirement file." (D.I. 18 at A34) OPM's standard operating procedure was to return state court orders related to FEGLI benefits to the person who had supplied the orders. (D.I. 17 at 3)

While Mr. Pascavage was aware of the Divorce Decree, in 1997 he opted to name his second wife and his four children as the beneficiaries on his FEGLI life insurance policy, in direct contravention of the terms of the Divorce Decree. (D.I. 18 at A9-10)

On July 22, 1998, Congress amended 5 U.S.C. § 8705. In particular, Congress amended § 8705 to require that state court orders involving FEGLI benefits take precedence over any contrary designations. (D.I. 17 at 3-4) As amended, § 8705 now provides (with emphasis added):

> (a) *Except as provided in subsection (e)*, the amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:
>
> . . .
>
> (e) (1) Any amount which would otherwise be paid to a person determined under the order of precedence named by subsection *(a) shall be paid (in whole or in part) by the Office to another person if and to the extent expressly provided for in the terms of any court decree of divorce,* annulment, or legal separation, or the terms of any court order or court-approved property settlement

3

> agreement incident to any court decree of divorce, annulment, or legal separation.
>
> (2) For purposes of this subsection, *a decree, order, or agreement referred to in paragraph (1) shall not be effective unless it is received, before the date of the covered employee's death, by the employing agency or, if the employee has separated from service, by the Office.*

Thus, under the amended statute, so long as court orders are submitted prior to the covered employee's death, OPM is required to comply with state court orders, even if the covered employee had an inconsistent or contrary designation on the FEGLI forms. (D.I. 17 at 3; D.I. 18 at A18; *see also id.* at A27, A30, A34) OPM does not dispute that Plaintiff's 1995 Divorce Decree involving the distribution of marital property between her and Mr. Pascavage is a "court decree of divorce" for purposes of the statute. 5 U.S.C. § 8705(e) (2006).

The legislative history of the statutory amendment that created § 8705(e) includes the following statement:

> Under current law, domestic relations orders such as Divorce Decrees or property settlement agreements do not affect the payment of life insurance proceeds. Instead, distribution of the proceeds is controlled by statute. When the policyholder dies, the proceeds are paid to the beneficiary designated by the policyholder, if there is one, or to other individuals specified by statute.
>
> H.R. 1316 . . . *amends the law to require that the Office of Personnel Management should pay the proceeds in accordance with certain domestic relations orders or court-approved property settlements.* This is similar to the law's treatment of retirement annuities, which the Office of Personnel Management must also allocate in accordance with Divorce Decrees.

143 Cong Rec 4232 (1997) (emphasis added); *see also* D.I. 14 at 10.

In connection with the statutory amendment to § 8705, OPM adopted regulations

4

providing that OPM would only honor court orders that were *received after* the enactment of the statutory amendment – that is, after July 22, 1998. (D.I. 17 at 4) OPM had provided the required notice of these regulations, along with the required opportunity for public comment. (*Id.*; *see also* 64 FR 16601-02 (April 6, 1999); 64 FR 54761 (October 8, 1999))

Mr. Pascavage died on July 20, 2007, never having complied with the terms of the Divorce Decree by naming Plaintiff as the beneficiary of his FEGLI life insurance policy. OPM, acting through its private insurance contractor, MetLife, distributed the entirety of Mr. Pascavage's FEGLI life insurance proceeds according to the terms of his FEGLI designation form. Therefore, the proceeds went to Mr. Pascavage's second wife and four children. (D.I. 17 at 4-5) Plaintiff's counsel unsuccessfully petitioned OPM to honor the Divorce Decree and pay the proceeds to Plaintiff. OPM, acting through its private insurance contractor, responded to Plaintiff as follows:

> For you [*sic*] information: Public Law 105-205 was enacted by President Clinton on July 22, 1998. . . . In order for a decree of divorce to be valid, it must be received by the appropriate office . . . on or after July 22, 1998, and before the insured individual's death. . . .
>
> Decree of divorces [*sic*] that were filed prior to enactment of Public Law 105-205 was [*sic*] not considered valid. The Office of Personnel Management has certified that the court order was received in 1995 [*sic*] was never re-submitted after 7.22.1998.
>
> Therefore, we are sorry, but no benefits are payable to you based on the decree of divorce.

(D.I. 15 at A13)

Plaintiff initiated this lawsuit on April 22, 2009, on behalf of herself and "all others

5

similarly situated."[5] (D.I. 1 at 1) The parties filed cross-motions for summary judgment, completing briefing on May 13, 2010. (D.I. 13; D.I. 16) The Court heard oral argument on the motions on January 27, 2011. (D.I. 27) ("Tr.")

## II. **LEGAL STANDARDS**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

---

[5]In resolving the pending motions, the Court has not considered issues that may arise relating to the possibility of class certification.

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 411 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## III. DISCUSSION

The Court now turns its attention to the merits of the case.[6] In evaluating OPM's

---

[6] In its briefs, OPM raised questions about the nature of the relief Plaintiff seeks. (D.I. 17 at 6-8) In her complaint, Plaintiff lists three grounds for relief: (1) declaratory relief; (2) petition for judicial review; and (3) petition for writ of mandamus. (D.I. 1 at 10-12) OPM argued that a writ of mandamus was unavailable because OPM owed no duty to Plaintiff, as OPM contracts with a private insurance company, MetLife, to administer the FEGLI program. (D.I. 17 at 5) Likewise, OPM contended that Plaintiff could not seek declaratory relief. At oral argument, however, OPM acknowledged that this Court has jurisdiction to hear the case. (Tr. at 21) In any event, the Court concludes that it has jurisdiction, pursuant (at least) to the Administrative Procedure Act. *See* 5 U.S.C. § 702 *et seq.* ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.").

interpretation of § 8705(e), the Court undertakes the analysis set out in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). Thus, the first step in determining the validity of an administrative regulation is to look at whether Congress has actually spoken directly to the issue currently before the Court:

> [U]nder *Chevron*, we must first determine if the statute is silent or ambiguous with respect to the specific issue of law in the case, using traditional tools of statutory construction to determine whether Congress had an intention on the precise question at issue. If congressional intent is clear, the inquiry ends, as both the agency and the court must give effect to the plain language of the statute.

*Mannella v. Comm'r*, 631 F.3d 115, 120 (3d Cir. 2011) (internal quotation marks omitted). If the Court determines that Congress has not spoken directly to an issue, the Court moves on to the second step of *Chevron*. At step two, the Court asks whether an agency's interpretation of a statute is reasonable:

> Where, however, a statute is silent or ambiguous with respect to the specific issue, the court proceeds to step two, where it inquires whether the agency's answer is based on a permissible construction of the statute.

*Id.* (internal quotation marks and citations omitted). In answering the second question, the Court must "defer to the [agency's] implementation of the statute unless the legislative history or the purpose and structure of the act clearly reveal a contrary intent on the part of Congress." *Id.* at 123. Thus, at step two, "if the language of the statute is open or ambiguous – that is, if Congress left a 'gap' for the agency to fill – then we must uphold the Secretary's interpretation as long as it is reasonable." *Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*, 550 U.S. 81, 89 (2007) (internal citations omitted).

The Court begins, of course, with step one of the *Chevron* analysis. In doing so, the

Court must "determine whether Congress has unambiguously expressed [its] intent, by looking at the 'plain' and 'literal' language of the statute." *United States v. Geiser*, 527 F.3d 288, 294 (3d Cir. 2008) (internal quotations omitted). In other words, the Court must consider the text and structure of the statute in question, *see Zheng v. Gonzales*, 422 F.3d 98, 120 (3d Cir. 2005); *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1498 (3d Cir. 1996), but not its legislative history, *see Geiser*, 527 F.3d at 294. "In the first step of the *Chevron* analysis, courts may employ[] traditional tools of statutory construction [to] ascertain[] that Congress had an intention on the precise question at issue." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 448 (1987) (internal quotation marks and citations omitted). Even an agency that is otherwise entitled to the highest level of rule-making authority cannot claim the protections afforded by *Chevron* unless a reviewing court can "yield no clear sense of congressional intent." *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 600 (2004); *Eagle Broad. Group, Ltd. v. FCC*, 563 F.3d 543, 552 (D.C. Cir. 2009) (same).

In this case, whether Congress directly addressed the issue in dispute depends, to some extent, on how one frames the question. Plaintiff contends that Congress explicitly imposed time-constraints (or temporal conditions) in § 8705(e). Thus, in Plaintiff's view, "Congress directly addressed *when* a decree must be received by OPM in order to be effective." (D.I. 14 at 9) (emphasis in original) On this view, Congress has said that a decree must be received *before* the death of the covered employee, while OPM has added that it must also be received *after* July 22, 1998. Plaintiff asserts that OPM's additional requirement is not in the statute and should not be permitted.

OPM, on the other hand, sees the *Chevron* step one question as whether Congress spoke

to the issue of retroactivity. That is, did Congress answer definitively how this statute was intended to apply to judicial decrees issued prior to the 1998 amendment? (D.I. 17 at 10) OPM contends that Congress was silent on this issue and, therefore, the analysis must proceed to step two of *Chevron*. At step two, OPM contends that its regulation appropriately fills the gap left by Congress. (*Id.* at 9-10)

The Court agrees with Plaintiff. The issue in dispute is the timing as to when OPM must receive an applicable judicial decree in order to give it precedence in determining whom to pay FEGLI benefits. Congress spoke directly to this issue. As amended, § 8705(e) provides (with emphasis added): "For purposes of this subsection, a decree, order, or agreement referred to in paragraph (1) shall not be effective ***unless it is received, before the date of the covered employee's death,*** by the employing agency or, if the employee has separated from service, ***by the Office [OPM].***" Congress imposed only one requirement as to when a judicial decree must be received: it must be received by OPM ***before*** the covered employee's death.

OPM's regulatory requirement that, to be effective in OPM's beneficiary determination, the judicial decree must also have been received ***after*** the July 22, 1998 enactment of § 8705(e) is a improper additional limitation. As both parties recognize, when Congress has directly addressed an issue, an agency may not engraft additional conditions onto the statute. *See Bureau of Alcohol, Tobacco and Firearms v. Fed. Labor Relations Auth.*, 464 U.S. 89 (1983); *California Cosmetology Coalition v. Riley*, 110 F.3d 1454, 1460 (9th Cir. 1997) (stating courts owe no deference to agency regulations that engraft onto statute "something which is not there") (internal quotation marks omitted); *Fowler v. United States Parole Comm'n*, 94 F.3d 835, 841 (3d Cir. 1996) ("We owe no deference, however, to administrative interpretations or regulations that are

based upon an impermissible construction of the statute."); Tr. at 22.

To the extent that the issue in dispute in this case is, alternatively, viewed as whether § 8705(e) should be applied retroactively, the Court concludes that its interpretation of the statute does not result in retroactive application. "[W]hile statutory retroactivity has long been disfavored, deciding when a statute operates 'retroactively' is not always a simple or mechanical task." *Landgraf v. Usi Film Prods.*, 511 U.S. 244, 268 (1994); *see also id.* at 270 ("Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity."). A statute does not "operate retrospectively merely because it is applied in a case arising from conduct antedating the statute's enactment." *Id.* at 255. Nor is a statute "made retroactive merely because it draws upon antecedent facts for its operation." *Id.*

To determine if a particular statutory interpretation is one that gives rise to retroactive effect, the Court must look to "the nature and extent of the change in the law" and consider the "degree of connection between the operation of the new rule and a relevant past event." *Id.* In other words, retroactivity occurs when a statute "attaches new legal consequences to *events completed before its enactment.*" *Id.* at 270 (emphasis added).

Here, the "relevant past event," or the "event" that completed the "transaction" between OPM and Mr. Pascavage, was the death of Mr. Pascavage, which did not occur before the enactment of the amendment. It is the death of the covered employee (here, Mr. Pascavage) that triggers OPM's obligation to identify the beneficiary to whom to pay out the proceeds of the covered employee's FEGLI policy. (Tr. at 18) In amending the statute to add § 8705(e), Congress directed that as long as OPM had received a judicial decree prior to having to make this

11

determination (i.e., prior to the covered employee's death), then OPM must give precedence to such judicial decree. It would be an improper retroactive application of § 8705(e) if state judicial decrees were given precedence in determining beneficiaries of FEGLI policies covering individuals whose deaths occurred prior to the July 22, 1998 amendment. Plaintiff is not asking OPM to do such a thing, nor is the Court directing OPM to do so. Therefore, Plaintiff's request – like the Court's ruling – does not run afoul of the presumption against retroactive application of statutes. *See generally Bowen v. Georgetown Univ. Hosp. et. al.*, 488 U.S. 204, 208 (1988) (explaining that "retroactivity is not favored in the law.").

Here, it is undisputed that OPM received the Divorce Decree in 1995, well before Mr. Pascavage died in 2007. Thus, the Divorce Decree was received by OPM prior to the covered employee's death. Plaintiff, therefore, entirely complied with the timing requirement imposed by Congress when it adopted § 8705(e) in 1998. In determining the beneficiary of Mr. Pascavage's FEGLI policy, OPM must give precedence to the Divorce Decree.[7]

## IV. CONCLUSION

Accordingly, for the reasons set forth above, the Court will grant Plaintiff's motion for partial summary judgment and deny OPM's motion for summary judgment. An appropriate Order follows.

---

[7] Given the Court's conclusions, it is not necessary to proceed to step two of the *Chevron* analysis. *See Geiser*, 527 F.3d at 299 (explaining that "[t]he District Court properly declined to proceed to *Chevron* step two" when statute was not ambiguous).

12